**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LEO A. G. BRETON,                        :
                                         :
        Plaintiff,                       :
                                         :
    v.                                   :  Civil Action No. 04-1239 (JR)
                                         :
DONALD L. EVANS, Secretary, U.S. :
Department of Commerce, *et al.*,  :
                                         :
        Defendants.                      :

**MEMORANDUM**

Leo A. G. Breton, an employee of the Environmental Protection Agency, seeks judicial review of a determination by the Secretary of Commerce that EPA is entitled to all rights, title and interest in his invention of an automotive emissions measuring system.  The dispute arises under Executive Order 10,096 and the implementing regulations, 37 C.F.R. § 501.1, et seq.  I previously dismissed one count of the complaint [7]. Plaintiff and the government then cross-moved for summary judgment on the remaining Administrative Procedure Act claim. The defendant's motion will be granted.

1.  **Background**

    A.   Regulatory framework

Executive Order 10,096, 15 F.R. 389 (1950), and 37 C.F.R. § 501.1, et seq., "provide for the administration of a uniform patent policy for the Government with respect to the

[Government's] rights in inventions made by Government employees."

Section 501.6 describes "[c]riteria for the determination of rights in and to inventions."  The criteria establish one of two presumptions – either the individual employee-inventor owns the invention, or the Government does.  When the inventor is not employed to perform research-related tasks, as described by § 501.6(a)(3), employee ownership is presumed; when the inventor is employed to perform research-related tasks, Government ownership is presumed.  Both presumptions are rebuttable.  37 C.F.R. § 501.6(a)(3).

The Government can rebut a presumption of employee ownership by showing that the invention was made by the Government employee: during working hours; or with a contribution by the Government of facilities, equipment, materials, funds, or information, or of time or services of other Government employees on official duty; or that the invention bears a direct relation to or was made in consequence of the official duties of the inventor.  37 C.F.R. § 501.6(a)(1).  The Government is entitled to the entire right, title, and interest in and to an invention if any single one of the Section 501.6(a)(1) factors is met.  See Schlie v. Dep't of the Air Force, 37 U.S.P.Q.2d 1215, 1216-17 (Dep't of Commerce 1993).

An employee may rebut the presumption of Government ownership, applying the same principles, <u>Grace v. Dep't of the Army</u>, 65 U.S.P.Q.2d 1475, 1477 (Dep't of Commerce 2002), by showing that, as measured by the section 501.6(a)(1) factors, it would be "insufficient equitably to justify a requirement of assignment to the Government of the entire right, title and interest in and to such invention."  37 C.F.R. § 501.6(a)(2). "[R]ights determinations turn on the facts of a particular case and so are made on a case-by-case basis."  <u>Menke v. Dep't of the Army</u>, 20 U.S.P.Q.2d 1386, 1387 (Dep't of Commerce 1991).

B.   <u>Facts</u>

Plaintiff has been employed by the Environmental Protection Agency as a mechanical engineer since 1995, [1] at ¶ 4, working on "investigation of new and in-use motor vehicles and engines to assure compliance with the Clean Air Act requirements."  [1] at ¶ 18.  He oversees vehicle testing in the laboratory to ensure conformity with EPA's test procedures, and he provides proper testing procedures to testing contractors.  <u>Id.</u>

Plaintiff realized that a system for measuring emissions under real-world conditions, while a vehicle is in use, would be superior to the then-existing system that measured emissions only in simulated or laboratory environments.  [1] at ¶ 10.  In 1995, he invented a system for measuring in-use vehicle pollutant emissions and fuel consumption per mile traveled.  [1] at ¶ 11.

By August 1995, the invention was generating regular test
results.  [14-1] at 5.  The system is now known as the Real-time,
On-road, Vehicle Emissions Reporter, or ROVER.  [1] at ¶ 5.

Plaintiff estimates that he worked on the invention for 616
hours over a 28 week period.  Of the 616 hours, 112 were on
Government time, during working hours – 18% of the total
development time.  Plaintiff also describes using Government
equipment to make the invention, including "a standard electrical
meter, a computer, hand tools, an automotive 'scan tool,' an
exhaust gas analyzer, and a PC data acquisition card."
In addition, plaintiff used consumable Government materials
valued at $26, and "indirect Government funds" valued at
approximately $450.  [11-1] at 5.

C.   Procedural history

After 1995, as government interest in the project grew, "the
proportion of working hours spent on testing and improving [the
invention] has expanded."  Id.  During 1996, over $50,000 of
Government funds were expended on the invention.  Id.  From 1995
through early 1997 various third parties used the invention in
some capacity.  [11-1] at 5.  In April 1997 plaintiff filed a
Disclosure Document with the United States Patent Office, and in
August 1997 he filed an official Employee Report of Invention
with EPA.  Id.  Based on the Employee Report of Invention and its
analysis, EPA filed a provisional patent application in January

1998.  Id.  On June 15, 2000, plaintiff executed an assignment of
all of his rights in the invention to the Government.

Over a year later, plaintiff's attorneys sent EPA a letter
questioning the validity of the assignment and asking EPA to
provide plaintiff with a "rights determination process as
described by 37 C.F.R. 501."  EPA then conducted a formal rights
determination.  After reviewing documents provided by plaintiff
and plaintiff's laboratory, EPA found the presumption of
Government ownership applicable, because plaintiff was assigned
"to invent or improve or perfect" an art or process, as described
in 37 C.F.R. § 501.6.  EPA also found that plaintiff made the
invention using working hours, with the contribution of
Government resources, and as a consequence of his official
duties, thus satisfying all three of the Section 501.6(a)(1)
criteria.  EPA concluded that the Government was entitled to all
rights, title, and interest in the invention. Plaintiff appealed
EPA's determination to the Department of Commerce.  [11-1] at 6.

On December 4, 2003, upon consideration of the entire
record, the Secretary of Commerce issued a decision affirming
EPA's formal rights determination.  [11-4] at 8.  The Secretary
found the non-Government ownership presumption applicable,
because plaintiff was not employed or assigned to perform
research-related tasks, id. at 5, but he found that the
Government had rebutted the presumption by showing that plaintiff

- 5 -

made the invention during working hours and with a contribution
of Government funds and materials – that plaintiff "freely used
Government time and materials."  [11-4] at  4-6.  The Secretary
thus also concluded that the Government is entitled to the entire
right, title and interest in and to the invention.  On July 22,
2004, plaintiff initiated the instant action for judicial review.

2.  **Analysis**

 A.  <u>Standard of review</u>

 Under the APA, the court is to set aside an agency action
that is "arbitrary, capricious, an abuse of discretion, or
otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).
The court's review under the "arbitrary and capricious" standard
is "searching and careful," but "the ultimate standard of review
is a narrow one."  <u>Marsh v. Oregon Natural Res. Council</u>, 490 U.S.
360, 378 (1989).  Because the standard is highly deferential, a
court need not find that the agency's decision is "the only
reasonable one, or even that it is the result [the court] would
have reached had the question arisen in the first instance in
judicial proceedings."  <u>Am. Paper Inst., Inc. v. Am. Elec. Power
Serv. Corp.</u>, 461 U.S. 402, 422 (1983).  The court must review the
record below to determine "whether the agency has considered the
relevant factors and articulated a rational connection between
the facts found and the choice made."  <u>Jifry v. FAA</u>, 370 F.3d
1174, 1180 (D.C. Cir. 2004).  Similarly, courts consider whether

the agency "has acted consistently with its previous applications
of the governing regulations and whether the application of its
general regulative doctrines to the specifics of th[e] case has
been reasonable."  DSE, Inc. v. United States, 169 F.3d 21, 28
(D.C. Cir. 1999).

    B.   The Commerce decision was not arbitrary or capricious.

Commerce relied on facts from both 1995 and 1996 to find
that the presumption of employee ownership had been rebutted.
Plaintiff objects that the invention was "made," within the
meaning of the of Executive Order or the regulations, when it was
reduced to practice, and he submits that ROVER was reduced to
practice no later than August 17, 1995.  [17-1] at 4.

EPA has consistently maintained that the invention was not
reduced to practice until early 1997, but the date is ultimately
irrelevant.  Even if it was error to use 1996 facts in its
decision, the agency had a rational basis for its determination
in the 1995 facts alone.  Plaintiff's first draft of the
invention was done at work in 1995.  Plaintiff acknowledges that
roughly 18 percent of the time he spent reducing ROVER to
practice (112 hours out of 504 hours total) was government time.
[11-4] at 5-6.  Plaintiff describes using government equipment to
make the invention, including "a standard electrical meter, a
computer, hand tools, an automotive 'scan tool,' an exhaust gas
analyzer, and a PC data acquisition card."  In addition, during

1995, plaintiff used consumable Government materials valued at
$26, and "indirect Government funds" valued at approximately
$450.  [11-1] at 5.

     The Secretary determined that two § 501.6(a)(1) factors
rebutted the employee's presumed ownership – the use of working
hours and the contribution of Government funds and materials –
but any single factor would have been enough.  See Schlie v.
Dep't of the Air Force, 37 U.S.P.Q2d 1215, 1216-17 (Dep't of
Commerce 1993).  The fact that 18 percent of the time plaintiff
spent on the invention – in 1995 – was government time places
this case cleanly within the range of prior decisions in which
the Government successfully rebutted the presumption of employee
ownership.  See Flanagan v. Dep't of the Army, 65 U.S.P.Q.2d 1478
(Dep't of Commerce 2002)(340 hours of government time out of 3460
total hours – 10 percent – enough to rebut presumption); In re
Phillips, 230 U.S.P.Q. 350, 350-52 (Dec. Comm'r Pat. 1986)(same;
40 hours of government time out of a total of 540 hours – 7
percent).  The Secretary "has acted consistently with its
previous applications of the governing regulations."  DSE, Inc.
v. United States, 169 F.3d 21, 28 (D.C. Cir. 1999).

     The plaintiff's use of $475 in government funds and
materials would indeed have been enough to support a finding of
government ownership.  See, e.g., Goldberg v. Dep't of the Army,
49 U.S. P. Q. 2d 1382, 1383 (Dep't of Commerce)(use of a scrap of

air cylinder worth $120 and parts worth $85 sufficient to uphold Government ownership); <u>Fretheim v. Dep't of the Air Force</u>, 49 U.S.P.Q.2d 1316, 1318 (Dep't of Commerce 1998)($250 in Government funds sufficient to uphold Government ownership); <u>Phillips</u>, 230 U.S.P.Q. at 350, 352 ($190 of Government materials used to make the invention, along with Government facilities).

The amount of government time and resources used by plaintiff was much less than his own contributions, and the equities might favor plaintiff if the court were deciding this case de novo. The question in APA arbitrary and capricious review cases, however, is not what the court thinks of the mertis, but whether the agency has appropriately adhered to its regulations, process, and prior decisions. There is nothing in the record to support a finding that the Secretary's decision was arbitrary or capricious.

*    *    *    *    *

For the foregoing reasons, the government's motion for summary judgment [11] will be **granted**, and the plaintiff's cross-motion for summary judgment [14] will be **denied**. An appropriate order accompanies this memorandum.


JAMES ROBERTSON
United States District Judge